UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RONALD E MIKELL,

      Plaintiff,

v.                                Case No.:  2:19-cv-795-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER

Plaintiff Ronald E. Mikell filed a Complaint on November 5, 2019.  (Doc. 1).
Plaintiff seeks judicial review of the final decision of the Commissioner of the Social
Security Administration ("SSA") denying his claim for a period of disability,
disability insurance benefits, and social security disability insurance.  The
Commissioner filed the transcript of the administrative proceedings (hereinafter
referred to as "Tr." followed by the appropriate page number), and the parties filed a
joint memorandum detailing their respective positions.  (Doc. 22).  For the reasons
set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to §
205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental impairment that can be
expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A),

1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe,

making the claimant unable to do his previous work or any other substantial gainful

activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20

C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of

persuasion through step four, while the burden shifts to the Commissioner at step

five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.      Procedural History

Plaintiff filed an application for a period of disability and social security

disability insurance ("SSDI") on January 23, 2017, originally alleging a disability

onset date of January 1, 2008 and later amending the alleged onset date to December

31, 2008.  (Tr. at 45, 71, 148, 243).[1]  The application indicated Plaintiff's intent to

apply for supplemental security income ("SSI") as well.  (*Id.*. at 148-49).  On January

24, 2017, the SSA made an informal determination that Plaintiff was not entitled to

SSI because he had not filed an application.  (*Id.* at 115-17).  On May 14, 2018,

Plaintiff filed for SSI, alleging a disability onset date of December 31, 2008.  (*Id.* at

157).  Plaintiff's SSDI claim was denied initially on March 20, 2017, and upon

reconsideration on June 2, 2017.  (*Id.* at 71, 78).  Thereafter, Plaintiff requested a

---

[1] The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations, however, do not apply in Plaintiff's case because Plaintiff filed his claim before March 27, 2017.

hearing before an Administrative Law Judge ("ALJ") and ALJ William Reamon

held that hearing on July 25, 2018.  (*Id.* at 41-70).  ALJ Reamon issued an

unfavorable decision on November 26, 2018.  (*Id.* at 18).  On September 12, 2019,

the Appeals Council denied Plaintiff's request for review of this decision.  (*Id.* at 1).

On November 5, 2019, Plaintiff filed his Complaint with this Court.  (Doc. 1).  The

parties consented to proceed before a United States Magistrate Judge for all purposes

and filed a joint memorandum explaining the issues on appeal.  (Docs. 15, 18, 22).

The matter, therefore, is ripe.

III.    **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a

claimant has proven that he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x

890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

An ALJ must determine whether the claimant:  (1) is performing substantial gainful

activity; (2) has a severe impairment; (3) has a severe impairment that meets or

equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix

1; (4) can perform his past relevant work; and (5) can perform other work of the sort

found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th

Cir. 2004).  The claimant has the burden of proof through step four and then the

burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511

F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined Plaintiff met the insured status requirements of the Social

Security Act through December 31, 2013.  (Tr. at 18).  At step one of the sequential

evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2008, the alleged onset date, through December 31, 2013, the date last insured.  (*Id.*).  At step two, the ALJ determined that Plaintiff had the following severe impairments:  "degenerative disc disease; scoliosis; and an intellectual disability (20 [C.F.R. §]  404.1520(c))."  (*Id.*).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.*).

At step four, the ALJ found that "[a]fter careful consideration of the entire record, . . . through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 [C.F.R. §] 404.1567(c) except limited to work with a specific vocational preparation (SVP) rating of three or below."  (*Id.* at 22).  Additionally, based on the Vocational Expert's ("VE") testimony, the ALJ determined that Plaintiff "was capable of performing [his] past relevant work as a material handler," stating that "[t]his work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity (20 [C.F.R. §] 404.1565)."  (*Id.* at 34).  Specifically, the ALJ found that although the position of a material handler (DOT 929.687-030) is heavy in exertion, it was actually performed by Plaintiff at a light level of assertion.  (*Id.* at 34-35).

Because the ALJ found that Plaintiff could perform his past relevant work through his date last insured, the ALJ did not make any findings for the fifth step of

the sequential evaluation process.  The ALJ, thus, concluded that Plaintiff was not under a disability from December 31, 2008, the alleged onset date of disability, through December 31, 2013, the date last insured.  (*Id.* at 35).

## IV.      Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*,

979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## V.   Analysis

On appeal, Plaintiff raises four issues.  As stated by the parties, the issues are:

1.   Whether substantial evidence supports the [ALJ's] finding that Plaintiff could perform his past relevant work as actually performed;

2.   Whether the ALJ properly rejected consideration of Plaintiff's SSI application;

3.   Whether the ALJ adequately considered Plaintiff's intellectual disability;

4.   Whether the ALJ erred in failing to find Plaintiff disabled under the Medical-Vocational Guidelines.

(Doc. 22 at 12, 19, 24, 32).  The Court addresses each issue below.

### A.   Substantial evidence supports the ALJ's finding that Plaintiff could perform his past relevant work as actually performed.

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform his past relevant work as actually performed because it was not performed at the light level.  (Doc. 22 at 12).  Essentially, Plaintiff contends that the ALJ erred in giving greater weight to Plaintiff's hearing testimony – in which he stated that the heaviest item he lifted was twenty to thirty pounds – rather than the work history reports – in which indicated that he carried up to fifty pounds.  (*See id.* at 12-13).  In support, Plaintiff notes that although the ALJ cited one page of the March 26, 2017 work history report and the August 6, 2018 disability report, he did not cite the last page of the March 26, 2017 work history report.  (*Id.* at 13 (citing Tr. at 184, 248)).  Plaintiff

maintains that the last page of the report noted that "[w]orking at Wolfer's Produce was a very physical job that required a lot of heavy lifting." (*Id.* (quoting Tr. at 190)). Alternatively, Plaintiff argues that the ALJ erred in relying on Plaintiff's testimony rather than the reports because Plaintiff's testimony lacked reliability. (*Id.*). Plaintiff maintains that the testimony is unreliable because Plaintiff was unable to remember several details about his life, including when he got his GED, whether he took the GED test more than once, when he injured his back, whether he told his doctor that he lifted a refrigerator in 2015, whether he finished tenth grade, where he went to high school, why he did not continue high school, when his father died, whether he was living with his father at the time of his father's death, whether he was recommended surgery, and when he began using a walker. (*Id.* (citing Tr. at 46, 48, 49, 51, 57, 63-65)). In sum, Plaintiff essentially contends that the reports are more reliable because Plaintiff repeatedly noted that the job required heavy lifting whereas the testimony demonstrated memory problems. (*See id.* at 13-14).

Moreover, Plaintiff argues that the VE erroneously testified that Plaintiff's past relevant work was performed at a light level – which requires lifting no more than 20 pounds – because Plaintiff testified that he lifted 20-30 pounds. (*Id.* (citing 20 C.F.R. § 404.1567(b); Tr. at 65)). Additionally, Plaintiff maintains that "many fruit and vegetable cartons or crates routinely exceed 20 pounds," ranging from 35-100 pounds. (*Id.* (citing Karen L. B. Gast, "Containers and Packaging, Fruits and Vegetables," *Postharvest Management of Commercial Horticultural Crops*, Kansas State

University, Table 1. Standard size and net weights of common containers users for fresh vegetables)).

Furthermore, Plaintiff maintains that the ALJ's finding that Plaintiff could perform work at a medium level is not supported by substantial evidence. (*Id.* at 14-15 (citing *Coleman v. Barnhart,* 264 F. Supp. 2d 1007 (S.D. Ala. 2003); *Barnes v. Astrue*, 494 F. Supp. 2d 1275 (N.D. Ala. 2007))). Specifically, Plaintiff argues that ARNP Nancy Buthman opined as to Plaintiff's limitations in lifting, standing, walking, and sitting. (*Id.* at 15 (citing Tr. at 368)). Plaintiff notes that ARNP Buthman "stated Plaintiff's condition had existed since January 1, 2008." (*Id.* (citing Tr. at 369)). Plaintiff essentially argues that given these limitations, Plaintiff could not perform work at a medium level or perform the job of material handler as actually performed. (*See id.*).

In response, Defendant argues that the ALJ's finding that Plaintiff could perform his past relevant work as a material handler as it was actually performed is supported by substantial evidence. (*Id.* at 16). In support, Defendant first notes that "[a] claimant bears the burden of proving he cannot perform his past relevant work either as he performed it or as it is generally performed in the national economy." (*Id.* (citations omitted)). Additionally, Defendant argues that in determining that Plaintiff could perform his past relevant work as actually performed, the ALJ relied on the "VE['s] testimony regarding the jobs discussed in the DOT as well as his professional experience." (*Id.* (citing Tr. at 34-35, 65-67)). Thus, Defendant

8

contends that Plaintiff failed to meet his burden to prove he could not perform his past relevant work as actually performed.  (*Id.*).

Moreover, Defendant argues that the ALJ did not err in failing to discuss the last page of the March 26, 2017 work history report because the ALJ need not "refer to every piece of evidence in [his] decision" so long as the Court can determine that "the ALJ considered the claimant's medical condition as a whole."  (*Id.* at 16-17 (alteration in original) (quoting *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014))).  Defendant essentially maintains that in discussing Plaintiff's reports and testimony about the job requirements, "the ALJ properly considered all of the duties of Plaintiff's past relevant work."  (*See id.* at 17 (citations omitted)).

Additionally, Defendant notes that the VE testified that while the DOT classifies Plaintiff's past relevant work as a heavy exertional level, it was actually performed at a light exertional level.  (*Id.* at 18 (citing Tr. at 66)).  Defendant maintains that the ALJ specifically found that because Plaintiff had a medium RFC, Plaintiff could perform the lesser levels of exertion, including light work.  (*Id.* (citing Tr. at 35)).  Accordingly, Defendant maintains that "the ALJ properly performed his duty as trier of fact in finding that Plaintiff's medium RFC finding fit the actual duties of Plaintiff's past relevant work as a material handler."  (*Id.* (citing *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010); Tr. at 34-35)).

Finally, Defendant maintains that the cases cited by Plaintiff in support of his argument that the ALJ's finding was not supported by substantial evidence are distinguishable.  (*Id.*).  Specifically, Defendant maintains that unlike the cases cited

by Plaintiff, the ALJ in the instant case "correctly gave little weight to the extremely restrictive opinion of ARNP Buthman" and ultimately concluded that "the record does not contain objective examination findings or imaging studies from the period through the date last insured, but beginning in 2016, Plaintiff's physical treatment and exam records show generally normal findings consistent with an ability to perform work consistent with the RFC." (*Id.* at 18-19 (citations omitted)). Thus, Defendant argues that "[s]ubstantial evidence supports the ALJ's finding that Plaintiff can perform the job of material handler as the job was actually performed," and the decision should, therefore, be affirmed. (*Id.* at 19).

A plaintiff bears the burden of showing that he can no longer perform his past relevant work as he actually performed it, or as it is performed in the general economy. *Waldrop*, 379 F. App'x. at 953 (citing *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986)). "[I]t is the claimant's burden to demonstrate not only that he can no longer perform his past relevant work as he actually performed it, but also that he can no longer perform this work as it is performed in the general economy." *Id.* Even though a plaintiff has the burden of showing he can no longer perform his past relevant work, the Commissioner has the obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). To develop a full and fair record, an ALJ must consider all of the duties of that past relevant work and evaluate a plaintiff's ability to perform the past relevant work despite the impairments. *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x. 829, 831 (11th Cir. 2013). SSR 82-62 requires the ALJ to make the "following specific findings of

fact:  1. A finding of fact as to the individual's RFC.  2.  A finding of fact as to the physical and mental demands of the past job/occupation.  3.  A finding of fact that the individual's RFC would permit a return to his or her past job or occupation." SSR 82-62, 1982 WL 31386, at *4 (1982).[2]  A plaintiff is the primary source for vocational documents, and "statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."  *Id.* at *3.

At the hearing, the ALJ questioned Plaintiff about the requirements of his past relevant work, including about the weight of the boxes Plaintiff carried.  (Tr. at 52).  Plaintiff testified that the boxes were "[n]ot too heavy" and that the heaviest was "[m]aybe 20 pounds."  (*Id.*).  On cross-examination, Plaintiff reiterated this sentiment, stating that the heaviest thing he lifted was bananas, which weighed "[m]aybe 20 or 30 pounds."  (*Id.* at 65).  Having listened to Plaintiff's testimony, the VE labeled the past relevant work as a material handler, with a DOT code 929.687-030, generally performed at the heavy exertional level but actually performed at the light level, with an SVP of 3.  (*Id.* at 66).

In his opinion, the ALJ specifically considered both the written reports – indicating that Plaintiff's past relevant work was performed at a heavy exertional

---

[2]  "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.  Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference."  *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (internal citation omitted).

level – and Plaintiff's testimony – indicating that the work was performed at a light level – and gave greater weight to Plaintiff's testimony.  (*Id.* at 34-35 (citing Tr. at 184, 248)).[3]  Here, Plaintiff essentially only asks the Court to reweigh the evidence, which the Court cannot do.  *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).  Moreover, because "statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work," the Court cannot find that the ALJ erred in finding Plaintiff's testimony persuasive.  *See* SSR 82-62, 1982 WL 31386, at *3.  Rather, Plaintiff's testimony constitutes substantial evidence.  Thus, there is no basis to conclude that the ALJ erred.

To the extent Plaintiff attempts to argue that the ALJ erred in finding that Plaintiff is able to perform work at a medium level, the Court is unpersuaded.  An RFC is "the most" Plaintiff can do despite his physical and mental limitations.  20 C.F.R. § 404.1545(a)(1).  To determine a plaintiff's RFC, the ALJ must use all relevant medical and other evidence in the record.  *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 416.945(e).  When the Commissioner's decision is supported by substantial

---

[3]  The Court need not determine whether the ALJ erred in relying on the VE's determination that Plaintiff performed his work at the light level because Plaintiff's testimony indicated that the work was actually performed at a medium level.  (*See* Doc. 22 at 14).  Rather, the Court finds that if the material handler job was actually performed at the medium level, any error by the ALJ was, nonetheless, harmless because the RFC allows Plaintiff to perform medium work.  *See Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) and concluding that an error is harmless if a correct application of the regulations would not contradict the ALJ's ultimate findings).

evidence, however, the Court will affirm, even if the Court would have reached a

contrary result as the ALJ and even if the Court finds that "the evidence

preponderates against" the Commissioner's decision.  *See Edwards*, 937 F.2d at 584

n.3.

The ALJ noted that to be found disabled, Plaintiff needed to "establish

disability on or before December 31, 2013," the date last insured.  (Tr. at 23-24).  Yet

the ALJ noted that "[t]he medical evidence of record contains no evidence from the

period prior to the date last insured."  (*Id.* at 24 (citing Tr. at 268-421)).  The ALJ

thoroughly considered the medical evidence beginning in 2016, two years after the

date last insured.  (*Id.* at 22-34).  Based on the ALJ's thoroughly reasoned decision,

supported by citations to the administrative record, the Court finds that Plaintiff has

failed to meritoriously argue that the ALJ erred in assessing the RFC.

To the extent Plaintiff specifically contends that the ALJ erred in failing to

include the limitations recommended by ARNP Buthman in the RFC, (Doc. 22 at

15), the Court finds this argument lacks merit.  In his decision, the ALJ discussed

ARNP Buthman's opinion at length but gave it little weight and articulated specific

reasons for doing so.  (Tr. at 32-33).  Specifically, the ALJ noted that ARNP

Buthman examined Plaintiff on only two occasions and almost four years after the

date last insured.  (*Id*. at 33).  Additionally, the ALJ noted that ARNP Buthman is

not an acceptable medical source and did not provide support for her assessments.

(*Id.*).  Finally, the ALJ found that ARNP Buthman's assessments were not consistent

with the evidence of record and articulated specific discrepancies between ARNP Buthman's opinion and the record as a whole.  (*Id.*).

Ultimately, it is the ALJ's job to evaluate and weigh evidence and resolve any conflicts in the record.  "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them."  *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).  Upon review of the record, the Court finds that the ALJ's decision to give ARNP Buthman's opinion little weight is supported by substantial evidence.

**B.     The ALJ properly rejected consideration of Plaintiff's SSI application.**

Next, Plaintiff argues that the ALJ erred in failing to consider Plaintiff's SSI application.  (Doc. 22 at 19).  Specifically, Plaintiff argues that because Plaintiff's January 23, 2017 SSDI application indicated that he intended to file for SSI, the SSA's January 24, 2017 letter, rejecting his SSI application did not properly close out Plaintiff's protective filing status.  (*Id.* (citing POMS SI 00601.037B)).  Plaintiff contends that to close out a SSI protective filing, the Programs Operations Manual System ("POMS") requires that the SSA "attempt to contact the applicant" and only send a "call/come in letter" if the attempts are unsuccessful.  (*Id.* at 19-20 (citing

14

POMS SI 00601.037 B.3 and D.5)).  Additionally, Plaintiff maintains that his IQ of 60 limited "his ability to understand and respond to this improperly sent notice, and the notice was not provided to his representative at the time." (*Id.* at 20 (citations omitted)).  Accordingly, Plaintiff argues that the close out letter should be found invalid and, therefore, that the protective filing date was still open when Plaintiff filed for SSI on May 14, 2018.  (*Id.* (citing POMS SI 00601.037 B)).

Alternatively, Plaintiff contends that because the letter failed to comply with the POMS, the letter "constitutes misinformation as defined in 20 [C.F.R.] § 416.351 which would permit a deemed application date of January 23, 2017." (*Id.* (citing 20 C.F.R. § 416.351)).  In support, Plaintiff distinguishes *Miller v. Commissioner of Social Security*, in which the Eleventh Circuit concluded that the earlier protective filing date would not apply because the agency had not provided misinformation to the claimant.  (*Id.* at 20-21 (citing *Miller v. Comm'r of Soc. Sec.*, 280 F. App'x 870, 872 (11th Cir. 2008))).  Thus, Plaintiff appears to argue that the statutory exceptions in 20 C.F.R. § 404.633 should apply here because the January 24, 2017 letter was improperly sent.  (*See id.*).

Moreover, Plaintiff maintains that the ALJ erroneously refused to consider the application, finding that Plaintiff's representative "quite properly acknowledged that . . . it would be difficult to accept jurisdiction for a claim that has not been processed at the State agency" and ruled on by the SSA.  (*Id.* at 20 (quoting Tr. at 16)).  Plaintiff contends that the agreement that it would be difficult did not amount to a withdraw of the request as the ALJ recognized at the hearing.  (*Id.*).

Finally, Plaintiff maintains that the ALJ's error is not harmless because "it led to an unadjudicated period extending from the date last insured through the date of the decision." (*Id.* at 21). Plaintiff contends that "[h]ad the ALJ properly considered the SSI application, Plaintiff might have been found eligible for benefits during this period." (*Id.*). In support, Plaintiff notes that he was found disabled under the May 14, 2018 SSI application with an onset date of November 27, 2018, but "[h]ad the ALJ properly considered the SSI application with its still-open protective filing date of January 23, 2017, an earlier onset date than November 27, 2018, could and should have been found." (*Id.* at 21-22 (citing *Coleman v. Colvin*, 2016 U.S. Dist. LEXIS 178390 (M.D. Fla. Jan. 11, 2016))).

In response, Defendant argues that Plaintiff is not entitled to a protective filing date for his SSI application. (*Id.* at 22). In support, Defendant notes that it sent Plaintiff a notice on January 24, 2017, informing Plaintiff that he was not entitled to SSI because he did not file an application and that "he may want to file a claim for SSI right away, because he could lose benefits if the agency receives his signed application after March 25, 2017." (*Id.* (citing Tr. at 115)). Defendant maintains that Plaintiff filed his application for SSI on May 14, 2018, and was found disabled under the SSI application. (*Id.* (citations omitted)).

Against this backdrop, Defendant argues that Plaintiff's contentions that the ALJ improperly failed to consider the SSI application are meritless. (*Id.* at 23). Specifically, Defendant notes that "[t]he ALJ specifically determined he would not consider the May 2018 SSI application as it was currently at the State agency for

consideration." (*Id.* (citing Tr. at 16)). Moreover, Defendant argues that 20 C.F.R. § 416.351 does not apply because the SSA "did not misinform Plaintiff about his eligibility. Instead, the agency complied with the relevant regulations when it sent Plaintiff the January 2017 notice." (*Id.* (citing 20 C.F.R. § 416.305; 20 C.F.R. § 416.310)). Finally, Defendant maintains that the POMS does not address misinforming Plaintiff about his eligibility for SSI and that the POMS does not have the full force of the law. (*Id.* at 23-24 (citing *Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786-787 (11th Cir. 2011))). Ultimately, Defendant argues that Plaintiff is not entitled to an earlier filing date because "none of the exceptions to the requirements for filing an application were satisfied here." (*Id.* at 24 (quoting *Miller*, 280 F. App'x at 872)).

As an initial matter, the Court notes that the POMS is an internal Social Security Administration document outlining, *inter alia*, various policies of the Commissioner and, while it does not have the force of law, it can be persuasive. *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003). Nevertheless, the Court finds Plaintiff's argument that the SSA erred in failing to properly close out the protective filing date unavailing.

Specifically, the Court finds this case analogous to the Court's decision in *Wells v. Michael J. Astrue.* No. 8:09-CV-1947-T-TGW, 2010 WL 3894788 (M.D. Fla. Oct. 4, 2010), *aff'd sub nom. Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785 (11th Cir. 2011). In *Wells*, the plaintiff sought judicial review of a determination that she was not entitled to auxiliary child insurance benefits based on her father's social security

benefits because when she filed her application, she was over eighteen, was not a full-time student, and was not disabled. *See id.* Specifically, the plaintiff challenged the ALJ's determination that she was not entitled to a protective filing date because the Commissioner failed to follow proper closeout procedures under the POMS. (*Id.* at *3). The district court agreed with the ALJ's determination that "POMS do not apply at the Administrative Law Judge level. It is only used for guidance at the lower levels of adjudication, *i.e.*, at the State agency and at the Social Security Administration district office" and is, therefore, not enforceable at the ALJ hearing level. (*Id.* at *4 (citation omitted)). The Court ultimately determined that "a failure to follow the close-out procedures in POMS does not amount to an error of law. And in the absence of an error of law, there is no reversible error." (*Id.*). In affirming the decision, the Eleventh Circuit reenforced its holding that the POMS do not carry the full force of the law and concluded that because the Commissioner did not violate any rules, "the results of the hearing before the ALJ may stand." *Wells*, 430 F. App'x at 787.

Because the instant case is essentially indistinguishable from *Wells*, the Court finds that any failure by the SSA to follow its own procedures in POMS does not entitle Plaintiff to the relief he seeks. *See id.*

To the extent Plaintiff attempts to argue that the letter that the SSA sent amounts to misinformation under 20 C.F.R. § 416.351, such that the application should relate back to the SSDI filing date, the Court is not persuaded. As the Eleventh Circuit has noted, "[a] claimant must file an application in order to be

18

eligible for benefits." *Miller v. Comm'r of Soc. Sec. Admin.*, 280 F. App'x 870, 872 (11th Cir. 2008) (citing *Eagle v. Sullivan,* 877 F.2d 908, 909 n. 2 (11th Cir.1989); 20 C.F.R. § 404.603).  A claimant can receive benefits retroactively up to six months prior to the date of the application's filing.  *Id.* (citing 42 U.S.C. § 402(j)(1)(B)).  If the applicant submits a written statement indicating an intent to claim benefits, the date of that statement will be considered the filing date "if:  (1) the statement indicates an intent to claim benefits; (2) the statement is signed by the claimant; and (3) the claimant files an application on the proper application form within six months after being notified of the need to file an application."  *Id.* (citing 20 C.F.R. § 404.630). Nevertheless, in some limited situations – where the SSA caused a claimant not to file an application due to misinformation – the application will receive an earlier deemed filing date.  *See* 20 C.F.R. § 416.351.

Here, Plaintiff has not established that he received any misinformation from the SSA.  Rather, the January 24, 2017 letter explicitly informs him that he is not entitled to SSI benefits because he has not filed for SSI.  (Tr. at 115).  This is consistent with the requirements to be eligible for benefits.  *See Miller*, 280 F. App'x at 872.  Additionally, it clarifies that if Plaintiff seeks to file an application, he should do so right away and warns that Plaintiff needs to file by March 25, 2017.  (Tr. at 115).  Based on the letter and the parties' arguments, the Court cannot find any misinformation from the SSA to warrant an earlier deemed filing date under 20 C.F.R. § 416.351.  *See Miller*, 280 F. App'x at 872 (finding that because none of the

19

exceptions under 20 C.F.R. § 404.633 apply, the plaintiff was not entitled to an earlier filing date).

Thus, because the SSI application was not entitled to an earlier filing date, the Court finds that the ALJ did not err in refusing to consider the SSI application with the SSDI application.  As a result, the Court affirms the ALJ's decision on this issue.[4]

### C.    The ALJ adequately considered Plaintiff's intellectual disability.

Next, Plaintiff argues that "[t]he ALJ failed to adequately consider Plaintiff's intellectual disability."  (Doc. 22 at 24).  Specifically, Plaintiff contends that although "[t]he ALJ found Plaintiff had a severe impairment of an intellectual disability," the only relevant limitation included in the RFC was that Plaintiff could perform jobs with an SVP of 3 or less.  (*Id.*).  Plaintiff maintains that the SVP does not relate to the mental demands of a job and that the ALJ should have limited Plaintiff in the reasoning, mathematics, and language categories governed by the General Education Development.  (*Id.* at 24-25).

In support, Plaintiff cites Dr. Christine Needham, Ed.D.'s notes, which state that "many questions had to be repeated due to Plaintiff's lack of comprehension of receptive language and some were never quite understood," that Plaintiff "attained a full scale IQ of 60," that "Plaintiff's general cognitive ability is within the extremely

---

[4]  Because the Court affirms the issue on its merits, the Court need not address whether Plaintiff's counsel withdrew his request for the ALJ to consider the SSI application.

low range of intellectual functioning and his overall thinking and reasoning abilities exceed those of only 0.4% of individuals his age," that Plaintiff "may experience great difficulty in keeping up with his peers in a wide variety of situations that require thinking and reasoning tasks," and that Plaintiff's score of 40 on the Woodcock-Johnson Normative Update Tests of Cognitive Abilities was equivalent to an age of 5 years and 7 months. (*Id.* at 25 (citing Tr. at 412-13)). Additionally, Plaintiff notes that "[t]he ALJ did not make a specific finding regarding Plaintiff's lack of literacy." (*Id.*). Moreover, Plaintiff contends that a driver's license does not "undercut" the mental limitations because the questions on the written exam are read to persons who are illiterate. (*Id.*).

Furthermore, Plaintiff argues that while he had been able to perform his work as a material handler, ARNP Buthman opined that Plaintiff's "mental status [wa]s getting progressively worse." (*Id.* at 26 (citing Tr. at 409)). Plaintiff notes that ARNP Buthman opined that since January 1, 2008, Plaintiff could concentrate for less than one-third of the workday, carry out and remember simple instructions for one-third of the work day, "use judgement[,] respond to supervision, coworkers, and usual work situations," handle changes in a routine work setting, and would be expected to be off work tasks more than sixty percent of the time. (*Id.* (citing Tr. at 369)).

Similarly, Plaintiff contends that Dr. Needham opined that Plaintiff's employment opportunities are "greatly diminished" due to his lack of skills and cognitive disabilities along with his advance age. (*Id.* (citing Tr. at 420)). In support,

Plaintiff notes that Dr. Needham opined that Plaintiff was extremely limited in his abilities to travel in unfamiliar places or use public transportation, set realistic goals or make plans independently, in the abilities to understand, remember and carryout detailed instructions, "sustain an ordinary routine without special supervision, make simple work-related decisions, interact appropriately with the general public, and respond appropriately to changes in the work setting." (*Id.* (citing Tr. at 419-20)).

Moreover, Plaintiff maintains that if the ALJ included limitations based on GED levels, "Plaintiff's inability to again perform the job of material handler would have been evident" because ARNP Buthman's and Dr. Needham's opinions "suggest at most a reasoning level of 1," but the material handler job requires a reasoning level of two. (*Id.* at 27). In support, Plaintiff cites cases in which the Court found that positions with a reasoning level of two went beyond the plaintiff's restriction to "simple, repetitive tasks." (*Id.* (citing *McLain v. Astrue*, No. 8:06-cv-2156-T-TBM, 2008 WL 616094 (M.D. Fla. Mar. 3, 2008); *Marchitto v. Astrue*, 2009 U.S. Dist. LEXIS 26053 (M.D. Fla. Mar. 27, 2009))).

In sum, Plaintiff argues that the ALJ erred in failing to include limitations on Plaintiff's reasoning skills and the decision is, therefore, unsupported by substantial evidence. (*Id.*).

In response, Defendant contends that "[t]he ALJ properly considered the relevant evidence in assessing Plaintiff's RFC." (*Id.* at 28 (citing Tr. at 22-34)). Defendant argues in support that the ALJ considered Dr. Needham's and ARNP

22

Buthman's opinions but did not include the recommended limitations. (*Id.* (citing Tr. at 22, 406-10, 411-21)).

As to Dr. Needham's opinion, Defendant notes that the ALJ discussed the IQ testing "but found that Plaintiff's scores and limitations at that time were not consistent with Plaintiff's ability to perform semiskilled work for many years and his activities of daily living." (*Id.* at 29 (citing Tr. at 30-32, 411-17)). Specifically, Defendant points to the ALJ's finding that Plaintiff testified that he could read street signs, read and understand order lists, continued to work after the death of his father, and was able to drive a car, mow the lawn, live alone, do laundry, and ride a bike. (*Id.* (citing Tr. at 21, 29, 47, 49, 52, 53-54, 57, 62, 330, 334, 412)).

Similarly, Defendant notes that "Plaintiff's education record provides substantial evidence supporting the ALJ's RFC" because, as the ALJ noted, Plaintiff earned his GED, his test scores in eighth grade exceed the 2016 testing, and his report cards in the 1980-81 and 1981-82 school years showed passing grades in various classes. (*Id.* at 29-30 (citing Tr. at 21, 169, 173, 414-15)). Additionally, Defendant maintains that the ALJ noted that in January 2016, "Plaintiff's thoughts were organized and goal oriented," "Plaintiff was alert and fully oriented," and that "Plaintiff had adequate memory, with fair cognition, insight, and judgment." (*Id.* at 30 (citing Tr. at 21, 411)).

As to ARNP Buthman's opinion, Defendant argues that the ALJ gave the opinion little weight because ARNP Buthman did not evaluate Plaintiff until almost

four years after the date last insured, evaluated Plaintiff on only two occasions, and

is not an acceptable medical source.  (*Id.* at 30-31 (citations omitted)).

Finally, Defendant contends that "any argument that Plaintiff's reading

abilities prevented him from working is belied by Plaintiff's own statements and

work history."  (*Id.* at 31).  Specifically, Defendant notes that Plaintiff could read

menus and street signs and understood order lists while working.  (*Id.* (citing Tr. at

21, 49, 53-54)).  Additionally, Defendant points to the VE's note that "Plaintiff was

able to perform semi-skilled work as a material handler for over 20 years."  (*Id.*

(citing Tr. at 34-35, 52, 66)).  Thus, Defendant argues that Plaintiff failed to meet his

burden to prove he could not perform his past relevant work because the VE testified

that someone with Plaintiff's age, education, work experience, and RFC could

perform the material handler job as actually performed.  (*Id.* at 31-32 (citing Tr. at

22, 34-35, 66-67)).

In sum, Defendant maintains that substantial evidence supports the ALJ's

decision and that Plaintiff failed to meet his burden to show he could not perform the

past relevant work.  (*Id.* at 32).

As noted above, an RFC is "the most" Plaintiff can do despite his physical

and mental limitations.  20 C.F.R. § 404.1545(a)(1).  To determine a plaintiff's RFC,

the ALJ must use all relevant medical and other evidence in the record.  *Phillips*, 357

F.3d at 1238; 20 C.F.R. § 416.945(e).  When the Commissioner's decision is

supported by substantial evidence, however, the Court will affirm, even if the Court

would have reached a contrary result as the ALJ and even if the Court finds that "the

evidence preponderates against" the Commissioner's decision.  *See Edwards*, 937 F.2d at 584 n.3.

The ALJ's decision thoroughly addressed Plaintiff's intellectual disabilities but found that "the objective evidence does not support the extent of [Plaintiff's] alleged limitations." (Tr. at 25).  In support of his finding, the ALJ cited Plaintiff's school records, indicating that he repeated second and seventh grades; that his March 1980 achievement tests showed mild deficient – *i.e.,* reading, math, and language skills at a sixth grade level but spelling skills at a ninth grade level; that his April 1981 achievement tests showed his reading, math, and language skills at a sixth grade level and spelling skills at a fifth grade level; that his report cards from the 1980-1981 and 1981-1982 school years showed although he had failed some classes, he had passing grades in some subjects.  (*Id.* (citing Tr. at 169-73)).

Similarly, in analyzing the medical evidence, the ALJ summarized Dr. Needham's report, including his findings related to Plaintiff's intellectual disability, but also noted that Dr. Needham found Plaintiff's thoughts to be "organized and goal oriented," Plaintiff to be "easy to understand" with no evidence of loose associations or ideas of reference, Plaintiff's "perception and memory adequate," Plaintiff's "spelling skills and letter word identification" to be at an eighth grade level, that Plaintiff earned his GED and continued to work at his father's death until the company closed, and that Plaintiff's "insight and judgment were within normal limits." (*Id.* at 26 (citing Tr. at 411-417)).  Additionally, in determining that Dr. Needham's opinion is entitled to "scant weight," the ALJ reiterated Dr. Needham's

25

findings, again including his intellectual disabilities.  (*Id.* at 30).  Nevertheless, the ALJ found that the opinion was both internally inconsistent and inconsistent with Plaintiff's ability to perform semiskilled work and Plaintiff's daily activities.  (*Id.* at 30 (citing Tr. at 150-155, 176-190)).

In thoroughly discussing Dr. Needham's opinion, the record is clear that the ALJ considered all of Dr. Needham's findings in evaluating the RFC – including the findings related to Plaintiff's intellectual disability – but found the opinion to be inconsistent with the evidence of record and with itself.  (*Id.* at 30-31).  The ALJ supported his decision by ample evidence and citations to specific findings in Dr. Needham's own report and evidence of the record as a whole and the decision is, therefore, supported by substantial evidence.

In reasserting Dr. Needham's findings, which the ALJ found were entitled to scant weight, Plaintiff essentially only asks the Court to reweigh the evidence, which the Court cannot do.  Thus, there is no basis to conclude that the ALJ erred.

As to ARNP Buthman's decision, the ALJ likewise thoroughly discussed the opinion, including those related to Plaintiff's intellectual limitations.  (*Id.* at 32-33 (citing Tr. at 406-10)).  Nonetheless, as noted above, the ALJ found that ARNP Buthman's opinion was entitled to little weight.  (*Id.* at 33).  Specifically, the ALJ noted that ARNP Buthman examined Plaintiff on only two occasions, almost four years after the date last insured.  (*Id.*).  Additionally, the ALJ noted that ARNP Buthman is not an acceptable medical source and did not provide support for her assessments.  (*Id.*).  Finally, the ALJ found that ARNP Buthman's assessments of

Plaintiff's intellectual disability were not consistent with the evidence of record and articulated specific discrepancies between ARNP Buthman's opinion and the record. (*Id.*).  In particular, the ALJ notes that ARNP Buthman's opinion conflicts with Dr. Needham's notes that Plaintiff's thoughts were "organized and goal oriented," Plaintiff as "easy to understand" with no evidence of loose associations or ideas of reference, Plaintiff's "perception and memory adequate," Plaintiff's "cognition, insight and judgment were fair," and Plaintiff's "insight and judgment were within normal limits."  (*Id.* (citing Tr. at 411-17)).

In thoroughly discussing ANRP Buthman's opinion, the record is clear that the ALJ considered all of ANRP Buthman's findings in evaluating the RFC – including the findings related to Plaintiff's intellectual disability – but found the opinion to be inconsistent with the evidence of record.  (*Id.*).  The ALJ supported his decision by ample evidence and citations to specific findings in the evidence of the record.  (*Id.*).  The Court finds, therefore, that the decision is supported by substantial evidence.

As a final matter, the Court notes that Plaintiff does not specifically challenge the weight given to either Dr. Needham or ARNP Buthman.  Rather, Plaintiff merely challenges the ALJ's decision not to impose a GED limitation.  In doing so, however, Plaintiff merely rehashes the same evidence the ALJ summarized in the opinion.  (*See* Doc. 22 at 25-27).  Because Plaintiff's briefing does not otherwise provide any evidence not considered by the ALJ, the Court cannot conclude that the ALJ erred.  As noted above, the Court cannot reweigh evidence and will affirm the

decision even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3. Here, the ALJ specifically addressed the evidence cited by Plaintiff, found it was entitled to scant or little weight, and articulated specific reasons for the finding supported by ample record citations. In doing so, the ALJ cited specific reasons that he found supported the RFC – *i.e.*, Plaintiff's school records, Plaintiff's work history, including his ability to work after his father died, and his ability to understand the work orders. (*Id.* at 26-27). Accordingly, the Court finds that substantial evidence supports the RFC and, therefore, affirms on this issue.

> **D.    The ALJ did not err by failing to find Plaintiff disabled under the Medical-Vocational Guidelines.**

Finally, Plaintiff argues that the ALJ erred in failing "to find Plaintiff disabled under the Medical-Vocations Guidelines ("the grids")" in light of Plaintiff's age and ARNP Buthman's opinion. (Doc. 22 at 32). Specifically, Plaintiff contends that because he turned fifty before the date last insured, he would have been found disabled under the grids had the ALJ properly limited him to sedentary or less than sedentary work. (*Id.*).

In support, Plaintiff notes that the ALJ found that his degenerative disc disease and scoliosis were severe impairments. (*Id.* (citing Tr. at 18)). Additionally, Plaintiff contends that ARNP Buthman opined that:

> Plaintiff could lift less than 10 pounds occasionally, and was unable to carry a gallon of milk; in addition to normal

> breaks could stand and/or walk for a total of less than 2
> hours in an 8-hour workday as his legs give out if he stands
> more than 10 minutes; in addition to normal breaks could
> sit for a total of less than 2 hours in an 8-hour workday; and
> has to alternate sitting and standing due to back pain.

(*Id.* at 33 (citing Tr. at 368)).  Plaintiff, therefore, argues that ARNP Buthman's

opinion limits Plaintiff to sedentary or less than sedentary work, and that in failing to

adopt ARNP Buthman's opinion, "the ALJ evaded the grids and issued a decision

unsupported by substantial evidence."  (*Id.*).  In support, Plaintiff cites three cases

from the Northern District of Alabama in which the Court held that the plaintiffs

were disabled under the grids due to their age and limitations.  (*Id.* at 33-34 (citing

*Thomason v. Barnhart*, 344 F. Supp. 2d 1326, 1329-30, 1329 n.9 (N.D. Ala. 2004);

*Hughes v. Barnhart*, 323 F. Supp. 2d 1230, 1237 (N.D. Ala. 2004); *Harrison v. Barnhart*,

346 F. Supp. 2d 1188, 1192-93 (N.D. Ala. 2004))).  Accordingly, Plaintiff contends

that the ALJ erred by failing to find him disabled under Grid Rule 201.14.  (*Id.* at

34).

In response, Defendant contends that Plaintiff's argument that he should have

been found disabled under the grid "is irrelevant because substantial evidence

supports the ALJ's finding that Plaintiff could perform his past relevant work as a

material handler."  (*Id.* (citing Tr. at 34-35, 65-67)).  Similarly, Defendant maintains

that "Plaintiff's nonexertional limitations would preclude using the Grids to direct a

finding of disabled or not disabled."  (*Id.* (citations omitted)).

Nevertheless, Defendant argues that "even if the ALJ could have relied on the

Grids, Plaintiff failed to prove that Plaintiff was limited to sedentary exertional

work." (*Id.* at 35). In support, Defendant contends that while Plaintiff argues that the ALJ should have considered Plaintiff's diagnosis in his RFC, "mere diagnoses do not establish limitations." (*Id.* (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)). Defendant maintains, however, that the ALJ considered the diagnosis in assessing the RFC but found that "Plaintiff failed to show his impairments caused any greater limitations." (*Id.* (citations omitted)). In support, Defendant contends that "[a]s the ALJ explained, the record does not contain objective examination findings or imaging studies from the period through the date last insured, but beginning in 2016, Plaintiff's physical treatment and exam records show generally normal findings consistent with an ability to perform work consistent with the RFC." (*Id.* (citing Tr. at 24, 33, 277-80, 332-39)). Thus, Defendant maintains that substantial evidence supports the RFC and that because the RFC limited Plaintiff to medium work, "Grid rule 201.14 is inapplicable." (*Id.* (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.14; *see also* 20 C.F.R. § 404.1567(c))).

The Court finds that substantial evidence supports the ALJ's decision. Specifically, although Plaintiff appears to argue that the ALJ should have deferred to ARNP Buthman's findings, as noted above, the ALJ gave the opinion little weight and articulated specific reasons for doing so. (Tr. at 33). First, as already discussed, the ALJ noted that ARNP Buthman examined Plaintiff only twice, almost four years after the date last insured. (*Id.*). As it relates to the physical limitations in particular, the ALJ found that ARNP Buthman did not provide support for either her opinion that Plaintiff needs a break every 10 minutes or her opinion that Plaintiff needs

manipulative and visual limitations.  (*Id.* (citing Tr. at 368-69)).  Additionally, the ALJ noted that there is no medical evidence from the period between the alleged onset date and the date last insured but that ARNP Buthman's assessments are not consistent with the weight of the objective medical evidence of record.  (*Id.*).  For example, the ALJ noted that in 2016, after the date last insured, Plaintiff had intact lower extremity reflexes and muscle strength.  (*Id.* (citing Tr. at 277-280, 332-39)).  Accordingly, the ALJ's decision to give little weight to ARNP Buthman's opinion is supported by substantial evidence.

Additionally, the ALJ articulated specific reasons for finding that Plaintiff could perform medium level work.  (*Id.* at 23-25).  Specifically, the ALJ noted that there was no medical evidence for the relevant time period and that Plaintiff continued to work successfully for several years.  (*Id.* at 23-24).  Additionally, the ALJ thoroughly summarized the medical evidence beginning in 2016, including the imaging studies and the objective examination findings.  (Tr. at 24).  The ALJ noted that in April 2016, "x-rays showed L2-L3 degenerative disc disease with slight degenerative scoliosis" but that there was no evidence of instability.  (*Id.* (citing Tr. at 280)).  Similarly, the ALJ noted that in October 2016, an MRI and associated study showed "multilevel neural foraminal narrowing that was moderate in severity" in two locations but otherwise mild and "did not reveal significant central stenosis." (*Id.* (citing Tr. at 289-291)).  In May 2017, x-rays of the lumbar spine showed degenerative spondylosis but no evidence of fractures or spondylolisthesis, (*id.* (citing Tr. at 269)), x-rays of the thoracic spine showed only mild spondylosis and no

fracture, (*id.* (citing Tr. at 399)), and x-rays of the cervical spine revealed advanced degenerative spondylosis in some areas but only mild multilevel facet osteoarthrosis, (*id.* (citing Tr. at 3398)).  In August 2017, an MRI revealed multilevel lumbar spondylosis and slight interval enlargement of the left paracentral to the foraminal disc protrusion but otherwise no changes since October 2016.  (*Id.* (citing Tr. at 273-74)).  Additionally, the ALJ noted that Plaintiff's condition improved through vocational rehabilitation and over-the-counter ibuprofen.  (*Id.* at 24-25 (citing Tr. at 277, 280, 320-22, 341-42)).

Having fully summarized the medical records across the pertinent history, it is clear to the Court that the ALJ considered all relevant medical history, including after the relevant time period, and supported his decision with ample record citations.  Thus, the ALJ's RFC is supported by substantial evidence.  In simply rehashing ARNP Buthman's opinion, which the ALJ determined was entitled only to little weight, Plaintiff failed to show that the ALJ should have found Plaintiff limited to sedentary work.  Without such a limitation, Plaintiff cannot be found disabled under Grid Rule 201.14.  Accordingly, the Court finds that the ALJ did not err in failing to find Plaintiff disable under Grid Rule 201.14 and, therefore, affirms on this issue.

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.  Accordingly, the Court **ORDERS** that:

1.      The decision of the Commissioner is **AFFIRMED** pursuant to sentence

four of 42 U.S.C. § 405(g).

2.      The Clerk of Court is directed to enter judgment accordingly, to

terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 15, 2021.

_____

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties